**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **MATTHEW P. SCHORR, No. 64553-097,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **CIVIL NO. 15-cv-1242-MJR** |
| ) | |
| **JEFFREY S. WALTON,** ) | |
| **WARDEN, and** ) | |
| **DIRECTOR, FEDERAL** ) | |
| **BUREAU OF PRISONS,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM AND ORDER**

**REAGAN, Chief District Judge:**

Plaintiff Matthew Schorr is currently incarcerated at the Federal Correctional Institution in Seagoville, Texas. (Doc. 1 at 2-3.) Proceeding *pro se*, he has filed a complaint pursuant to 28 U.S.C. § 1331 and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 402 U.S. 388 (1971), alleging his civil rights were violated while he was incarcerated at the United States Penitentiary at Marion, Illinois ("Marion"), which is within this judicial district. (*Id.* at 2.) Schorr claims the Defendants violated his rights under the First and Fifth Amendments. He seeks monetary relief, as well as a ruling that the "Ensign Amendment" is facially unconstitutional.

Schorr filed his initial complaint on November 9, 2015. (Doc. 1.) He filed an amended complaint on January 4, 2016.[1] This matter is now before the Court for a preliminary review of Schorr's amended complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court shall

---

[1] Schorr filed his Motion to Amend Complaint (Doc. 4) on January 4, 2016. It differs from the initial complaint in that Defendant Walton is now sued only in his individual capacity and the current Warden of Marion is added as a party and sued in his/her official capacity. The Motion (Doc. 4) is **GRANTED**. The Clerk is **DIRECTED** to docket the amended complaint.

review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." *Id.* § 1915A(a). During this preliminary review under § 1915A, the Court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b)(1)-(2).

## Background

The complaint alleges the following facts. On four different occasions, Defendant Jeffrey S. Walton, former warden of Marion, returned to publishers certain publications that had been addressed to Schorr and delivered to Marion through the mail. The reasons for the publications' return were that they allegedly contained sexually explicit material or featured nudity.

Schorr's first claim concerns Defendant Walton's return of a May 2015 issue of *Nylon* magazine. *Nylon* is a popular culture and fashion magazine. The issue in question contained, on page 148, a picture of artist and peace activist Yoko Ono, widow of John Lennon, posing in front of Gaston Lachaise's 1932 bronze sculpture "Standing Woman" while the sculpture was on exhibit at the Museum of Modern Art in New York City. "Standing Woman" depicts a tall, busty woman in the nude. The sculpture depicts the woman's exposed nipples.

On April 23, 2015, Schorr received a copy of a letter written by Walton, addressed to *Nylon*. The letter indicated that Walton was returning the May 2015 issue. The Warden's cited reason for returning the issue, as contained in the letter, was that the issue "contain[ed] nude material on page 148; statute [sic.] of female with nude breasts and nipples visible, which by its nature, poses a threat to the orderly operation of the institution." Schorr filed an administrative

complaint, requesting a review of the May 2015 issue under staff supervision. Both Defendant Walton and Defendant Director of the Federal Bureau of Prisons ("BOP") denied his complaint.

On May 29, 2015, Schorr received another copy of a letter written by Walton, this one addressed to *Wired*. The letter indicated that Walton was returning a June 2015 issue of the magazine that had been addressed to Schorr. *Wired* is a magazine that reports on emerging technologies and their cultural, political, and sociological effects. Page 89 of the issue contained a drawing of a woman disrobing at what appears to be a beach, her nipples exposed. Walton's letter to *Wired* allegedly stated: "This publication on page 89 depicts nude pictures which by its nature, poses a threat to the orderly operation of the institution." Schorr filed an administrative complaint, just as he had when Defendant Walton rejected and returned the *Nylon* issue. Both Walton and the Director denied his grievance.

Schorr's next allegation concerns Walton's return of three catalogues published by CNA Entertainment. Schorr received the letter indicating Walton's rejection and return of the catalogues on April 15, 2015. The three catalogues were entitled, "Flat Chested Model Lydia," "Fresh Faces Model Chloe Knox 1," and "Fresh Faces Model Chloe Knox 2." Schorr states the aforementioned each consisted of a single 8½ x 11" catalogue containing eighty ½" x ¾" thumbnail photographs for sale. Schorr does not state whether the photographs depicted nude images. Walton's stated reason for rejecting the catalogues, as contained in his letter, was that they "contain[ed] sexually explicit information, or material or feature[d] nudity." Again, Schorr filed an administrative complaint that was subsequently denied by Walton and the Director.

Schorr's last allegation concerns Walton's rejection and return of a March 2015 issue of *Wired*. The letter sent by Walton to the publisher, a copy of which was supplied to Schorr on March 5, 2015, states that the issue "contain[ed] sexually explicit information or material or

feature[d] nudity on pages 81, 83, 84, and 91." Schorr claims the images on the aforementioned pages "illustrate a news article," but does not inform the Court what exactly the images depicted. Walton and the Director denied Schorr's subsequent administrative complaint.

Schorr sues Walton in his individual capacity, and both the current Warden of Marion and the Director in their official capacities.

## Discussion

Schorr's complaint consists of four numbered counts. Each count concerns one of the four events described above. Count I alleges constitutional violations surrounding the rejected *Nylon* issue, Count II the rejected June 2015 *Wired* issue, Count III the three rejected CNA Entertainment catalogues, and Count IV the rejected March 2015 *Wired* issue. Each count, in turn, contains three "claims for relief." All twelve claims for relief allege the same things: (1) Defendant Walton deprived Schorr of his First and Fifth Amendment rights each time he rejected and returned the aforementioned publications and when he denied him due process in his administrative appeals; (2) Defendant Director deprived Schorr of his First and Fifth Amendment rights when he affirmed the rejections of his administrative appeals; and (3) the Ensign Amendment is unconstitutional.

To facilitate the management of future proceedings, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court finds it appropriate to reorganize the claims in Schorr's *pro se* complaint and break them into different numbered counts, as shown below. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court. The designation of these counts does not constitute an opinion as to their merit.

  **COUNT 1:**  The Ensign Amendment is unconstitutional, both facially and as applied.

> **COUNT 2:** Defendants Walton and Director deprived Schorr of his First Amendment rights each time Walton rejected and returned the aforementioned publications.
>
> **COUNT 3:** Defendants Walton and Director deprived Schorr of his rights when they denied his administrative appeals.

### A.  Count 1

**Count 1** survives preliminary review. The Ensign Amendment states, in relevant part:

> [N]o funds [available to the Attorney General for the Federal Prison System] may be used to distribute or make available to a prisoner any commercially published information or material that is *sexually explicit or features nudity*.

28 U.S.C. § 530C(b)(6) (emphasis added). Implementing regulations define "sexually explicit" as "a pictorial depiction of actual or simulated sexual acts including sexual intercourse, oral sex, or masturbation." 28 C.F.R. § 540.72(b)(4). "Nudity" refers to "pictorial depiction[s] where genitalia or female breasts are exposed." *Id.* § 540.72(b)(2). The term "features" means the publication depicts "nudity or sexually explicit conduct on a routine basis or promotes itself based upon such depictions in the case of individual one-time issues." *Id* § 540.72(b)(3). However, nudity is not a "feature" where it illustrates "medical, educational, or anthropological content." *Id.*

The regulations also define the procedures prisons must take when they are prohibited from distributing material under the Ensign Amendment:

> When commercially published information or material may not be distributed by staff or made available to inmates due to statutory restrictions (for example, a prohibition on the use of appropriated funds to distribute or make available to inmates information or material which is sexually explicit or features nudity,) the Warden or designee shall return the information or material to the publisher or sender. The Warden or designee shall advise the publisher or sender that an independent review of the decision may be obtained by writing to the Regional Director within 20 days of receipt of the notification letter. Staff shall provide the inmate with written notice of the action.

*Id.* § 540.72(a). The above quoted statutory and regulatory language renders it clear that Defendant Walton was acting pursuant to the Ensign Amendment when he rejected and returned the publications.

While prisoners generally have a constitutionally-protected interest in their incoming and outgoing mail, "[p]rison officials may . . . impose restrictions on prisoner correspondence if those restrictions are 'reasonably related to legitimate penological interests.'" *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Crime deterrence, prisoner rehabilitation, and protecting the safety of prison guards and inmates are all legitimate penological interests. *Id.* In *Turner*, the Supreme Court held that prison regulations must be assessed under the following factors: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether the inmate has access to "alternative means" of exercising the restricted right; (3) the "impact [an] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether the regulation is an "exaggerated response to prison concerns." *Turner*, 482 U.S. at 89-91.

Schorr alleges that Warton based his rejection of the publications on his interest in maintaining security and order within the prison. A factual record is necessary to determine Warton's actual penological interest or interests in rejecting the publications, as well as the rationality of the Amendment's overall connection to such an interest. *See Ramirez v. Pugh*, 379 F.3d 122, 128 (3d Cir. 2004) (holding that the development of a factual record is necessary to determine the Ensign Amendment's connection to rehabilitative interests). Therefore, **Count 1** may proceed at this time.

### B.  Count 2

**Count 2** alleges a valid First Amendment claim against Defendant Walton. The Seventh Circuit has held that "[t]he free-speech clause of the First Amendment applies to communications between an inmate and an outsider." *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) (citing *Martin v. Brewer*, 830 F.2d 76, 76 (7th Cir. 1987)). To assert a cause of action for interference with or denial of one's mail under the First Amendment, a prisoner must "allege[] a continuing pattern or repeated occurrences of such conduct." *Id.* (citing *Sizemore v. Williford*, 829 F.2d 608, 609 (7th Cir. 1987)). Because Schorr has alleged at the very least repeated instances of Defendant Walton returning mail addressed to Schorr, **Count 2** survives preliminary review as to Walton.

**Count 2** does not survive, however, as to Defendant Director. Schorr attempts to tie the Director into his First Amendment claim against Walton by re-asserting his allegations against Walton. Because Schorr has not alleged that the Director was personally involved in rejecting and returning the publications, the Director is dismissed without prejudice from **Count 2**.

### C.  Count 3

Schorr may proceed with his claims against Walton, but not the Director, as to **Count 3**. Prison grievance procedures are not constitutionally mandated and thus do not implicate the Constitution per se. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). However, in *Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015), the Seventh Circuit held that a prisoner's correspondence to a prison supervisor may "establish a basis for personal liability [for violations of the prisoner's constitutional rights] where that correspondence provides sufficient knowledge of a constitutional deprivation." *Id.* at 781-82.

Here, Schorr filed four administrative appeals with Walton and the Director, all of which were denied. Because Schorr alleges that Walton is directly implicated in the alleged underlying constitutional wrong, he may proceed on a due process claim against Walton as to **Count 3**. Schorr has not, however, alleged that his administrative appeal to the Director contained coherent and highly detailed descriptions of his alleged constitutional injury sufficient to put the Director on notice that a violation had occurred. Therefore, the Director is dismissed without prejudice as to **Count 3**.

## Disposition

**IT IS HEREBY ORDERED** that Plaintiff may proceed on **COUNT 1**, on **COUNT 2** against Defendants **WARDEN** and **WALTON**, and on **COUNT 3** against Defendants **WARDEN** and **WALTON**. Defendant **DIRECTOR** is **DISMISSED** from **COUNTS 2** and **3** **without prejudice**.

The Clerk of Court shall prepare for Defendants **WARDEN** and **WALTON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to the Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending

the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon each Defendant (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on each Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Plaintiff's Motion for Extension of Time to Effect Service (Doc. 6) is **DENIED** as **MOOT**.

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, including for a decision on Plaintiff's Motion for Limited Discovery (Doc. 5).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 22, 2016**

s/ MICHAEL J. REAGAN
**MICHAEL J. REAGAN**
**Chief Judge**
**United States District Court**